## Burtle *et al. vs* Thomas, &c.

ERROR TO THE GRAYSON CIRCUIT.

*Administrators. Dower.*

JUDGE BRECK delivered the opinion of the Court.

CHANCERY.

*Case* 83.

*April* 22.

The case stated.

IN 1797, John Goldsberry died in the county of Nelson, intestate, leaving a widow and four infant children. In 1798, administration upon his estate was granted to his widow, who, in the following year, married James Shields. The decedant left two slaves, and a small personal estate. In 1804, Shields sold one of the slaves, by the name of Mat. The other, a female by the name of Pat, had two children within a few years after the widow intermarried with Shields, a boy called Jack and a girl called Peggy. Bennett Goldsberry, the oldest child, after a few years, was put to a trade; the other three children, who were daughters, were raised in the family of their step-father; one of them married Isaac Thomas, another Uriah Pirtle, and the third married Joseph H. Thomas.

In 1819, after the daughters were thus married, Shields and his wife removed from the county of Grayson, where they were then living, to the State of Missouri, taking with them the female slave, Pat, and her two children, Jack and Peggy.

In 1839, Joseph H. Thomas and wife, and Pirtle and wife, exhibited their bill in chancery in the Grayson Circuit Court, against Shields and wife, James Burtle as the executor of Andrew Burtle, who was the security of Mrs. Shields in her bond as administratrix of her first husband, also against Isaac Thomas and wife, and the infant children of BennettG oldsberry, John Shields, and

BURTLE *et al.*
*vs*
THOMAS, &c.

Henry Yater, and also the heirs or devisees of Burtle were made defendants.

In addition to the foregoing facts, the complainants alledge that there had been no settlement and distribution of the estate of their ancestor, John Goldsberry; that the slave Peggy had five children, and that the said Shields and wife refused to surrender the slaves in their possession, &c. to account and pay over the hire when demanded, but with a view to defraud the complainants, had sold and disposed of all said slaves; that the defendants, their son, John Shields, and their son-in-law, Henry Yater, had combined and confederated with them to remove and dispose of said slaves.

John Shields answered, denying all the allegations of fraud; James Burtle answered that his testator had died twenty five years before, and that his estate had long since been distributed, and resisted the claim of plaintiffs upon various grounds; the heirs also answer, in the same way; Isaac Thomas and wife admit the allegations in complainants' bill, and pray for a settlement and distribution of the estate of said Goldsberry; Shields and wife, the infant heirs of Bennett Goldsberry, and Yater, being all non-residents, were proceeded against as such. During the progress of the cause, Mrs. Shields died.

Decree of the
Circuit Court.

The Circuit Court decreed that the defendants, James Burtle, James Shields, John Shields, and Henry Yater, pay to Joseph H. Thomas and wife, $735 73; to Pirtle and wife the same sum; to Isaac Thomas and wife $202 74, and to the heirs of Bennett Goldsberry $1,124 28, and also to the complainants their costs; that as to James Burtle, the several sums decreed, are to be made and levied only of assets in his hands to be administered as executor of Andrew Burtle, deceased. To reverse that decree, this writ of error is prosecuted by James Burtle, &c.

In the revision of the case, we will first notice the basis, upon which the Court below, seems to have founded its decree.

An account was taken, in which the administratrix is charged with two thirds of the personality, embraced in the inventory and of the hire of the slaves and their increase,

and with the whole value of all the slaves in being, at the time Sheilds appears to have made some disposition of them in Missouri, about 1835, subject, however, to a deduction for raising the young ones, and for advancements to the heirs, by Shields. She is also charged with the price of the slave, Mat, sold by Shields in 1804. No credit is given or allowance made for burial expenses, the cost of administration, or for the services of the administratrix, nor for the raising and education of the children of Goldsberry.

A calculation upon this basis, to ascertain the liability of the administratrix, it seems to us, does injustice to her and to the other defendants sought to be made responsible. It will be recollected that Goldsberry left four infant children, the oldest between eight and nine, and the youngest only a few months. , The children continued, as they should, with their mother, and after her second marriage, with her and their step-father; the son, some five or six years, when he went to a trade; the daughters till they were married. They all appear to have been treated with parental kindness, affection, and liberality. They were well raised and educated. The whole amount of the personal estate, as stated in the inventory, no sale thereof appearing to have been made, after deducting one third for dower, and a very reasonable sum for burial expenses, and the cost of administration, was less than four hundred dollars ; of this sum the wearing apparel of the father of the female complainants, constituted near sixty dollars, and the bedding and other articles of household furniture, more than a hundred dollars. The residue, except a small amount in money, consisted of stock and farming utensils. The only other available means which the mother had for the support of her infant children, was the hire or services of the two slaves, in which she was entitled to dower. It seems to us, under such circumstances, unjust that the children should be allowed any thing for the hire of the slaves, or either of them. The mother and administratrix, and her husband, in appropriating to the support of the children their interest in the hire, did them no wrong. The amount, and even interest upon their portion of the personalty, must have

BURTLE *et al.*
*vs*
THOMAS, &c.

A widow adm'rx. with four or five children, married and kept the possession of the slaves, two in number, and the increase of one until the arrival of the children of age or marriage, clothing and educating them—Held that the value of the hire of the slaves after deducting the one-third, the widow's dower, was not more than adequate compensation for raising the children.

been wholly inadequate to their support. There is some testimony in the record, going to show that their services in the family were a fair compensation for boarding, clothing, and educating them. It would require strong testimony to bring us to that conclusion. The testimony in the record is not sufficient. It may have been the case after they were grown. It was manifestly not the case before, and we are not inclined to go into an enquiry as to the value of their services when grown, with a view to a set-off against their support before that time. Our conclusion is, that Shields and wife ought to be charged nothing for the hire of either of the two slaves left by Goldsberry; nor of their descendants or issue. They ought not to be charged for the hire of Mat, because he was sold in 1804, when the children were all very young and still in the family; nor for the female slave, Pat, for another reason, viz: that she was the widow's or Mrs. Shields' dower in the slave estate of her first husband. It is true there is nothing in the record to show that she was allotted to her as such, under any judicial order or decree; but the allegations in the complainants' bill, together with numerous facts and circumstances in the record, which will be adverted to, fully justify the presumption that after all the heirs were of age, she was so considered and treated by them.

In an amended bill the complainants suggested the death of Mrs. Shields, since the previous term of the Court, and then proceed to alledge: that said Shields and Elenor his wife, held the slaves, up to the time they left this State, as the property of the estate of John Goldsberry, subject to the right of dower of his widow, the said Elenor, and never pretended to hold them in any other way. It is true they further alledge that partition and division of said slaves could not be made without selling them, which complainants did not wish to force or have them scattered; and therefore they did not urge a division of them, so long as they considered their rights were secured. Shields and wife moved from Grayson county to Missouri, in 1819, and took with them the female slave, Pat, and her two children, Jack and Peggy; her former about seventeen, the latter about fifteen years

of age. All the children were, at that time, of age; two of the girls, if not all three, were then married. All the children were present when they started; set up no claim to the slaves or either of them, and made no objection to their being taken to Missouri; no settlement or arrangement in regard to hire was made, and no claim to hire asserted, nor until twenty years afterwards, so far as appears, when it was set up by complainants in their original bill. Another reason for regarding the female slave as the dower of the widow, is that she would have been a just and equitable allotment. The slave Mat, hired for $70 per year and Pat for $25, or that seems to have been the value of their hire.

The age of Mat does not appear, but estimating the value of a life estate in the two from the annual value of their hire, which would probably be a correct criterion, and more especially taking into consideration the probability that the female would be incumbered with children, upon whose services little calculation could be made, she would not exceed a reasonable allotment of dower in the two. It is true there is some proof that in 1835, the heirs set up some claim to the slaves in Missouri. But from 1819 to that time, a period of sixteen years, the right of Shields and wife to hold them, and that they were entitled to their services and hire, does not appear to have been questioned. In view of the whole case, and all the facts and circumstances, we think it may be fairly inferred that Mrs, Shields elected to hold Pat in right of her dower, and that all the heirs, when of full age, acquiesced and confirmed her election. It is difficult, upon any other principle, to account for the entire silence, for so great a lapse of time, of all the heirs, in cluding the husbands of the females, upon the subject of hire, and of their entire acquiescence in the removal out of the State, possession and enjoyment by Shields and wife, of Pat and her two grown children. The complainants do not alledge that they labored under any delusion in regard to their rights; on the contrary they expressly alledge, as we have seen, that they were fully aware, when the slaves were taken by Shields and wife to Missouri, that they held them as belonging to the es-

BURTLE *et al.*
*vs*
THOMAS, &c,

tate of Goldsberry, subject to the dower of Mrs. Shields. There is nothing, we think, in the fact relied on by counsel, that one of the daughters married while under age, and consequently, that her interest would not be affected by lapse of time. Her interest, upon her marriage, immediately vested in her husband, who was competent to assert and protect it.

In regard to the sale of the slave Mat, by Shields, no objection or complaint appears ever to have been made, nor indeed is any made now. Whether the proceeds were vested in lands, as suggested by counsel, for the use of the family, does not appear.

But the evidence in the record is ample, that Shields has paid over to the complainants, more than their portions of the personalty, and the proceeds, of the sale of Mat. The defendants, Thomas and wife, have also received more than their share; and we are also satisfied, that Bennett Goldsberry received his proportion.

The adm'rx. took and claimed one of the slaves of her deceased husband, as her dower slave, by the acquiescence of all the distributees for 17 years, then sold the slave and her increase —Held that at her death her husband and not her surety were liable for the value of the slaves sold to the distributees.

It follows then, from the view which we have taken of the whole case, and the principles which should govern it, that the complainants have failed to manifest their right to any relief against any of the defendants, on account of the personal estate, the proceeds of the slave Mat, or the hire of any of the slaves belonging to the estate of their ancester. To the issue of the slave, Pat, she having died about 1832, the heirs were entitled upon the death of the widow, but as they appear to have been sold, and converted by her husband and the defendants, John G. Shields and Yater, before that time, the heirs had a right to proceed immediately against them for the proceeds. But as they were sold by Shields and wife, in virtue of her right of dower, Burtle's representatives were not responsible upon the administration bond or otherwise.

Adm'r. is not liable for slaves sold by husband of the dowress.

The administrator is under no liability to the heir for slaves allotted to the widow, as dower. His control over them, after that time, ceases, and they vest absolutely in the heirs, subject to the dower estate. In this case, as the heirs permitted the widow and her husband to remove the slaves out of the State, and there hold them for twenty years, Burtle's estate ought not to be held li-

able, whether held as dower, or not. But we think the defendants, James Shields and his son John, and his son-in-law Yater, ought to be held responsible for the value of the slaves at the time of the conversion ; although, the defendant John denies all the allegations of fraud, he does not deny that he was concerned in the sale of the slaves, and received the proceeds or a portion thereof. James Shields held the slaves in trust for the heirs, subject to the dower of his wife ; as he, with the aid of the other defendants, has converted them, the proceeds, as the heirs elect so to regard it, would be a trust fund for which he, and the defendants John and Yater, who hold it, are liable.

But as the complainant, seek a settlement of the whole estate, and as we are satisfied, the advancements made by Shields to the complainants, and to the defendants, Thomas and wife, exceed their respective portions of the personalty, and the proceeds of the sale of Mat, we are of opinion the excess should be applied in reduction of their respective portions of the value of the slaves, when converted.

In addition to the receipts, in the record, we think the complainants, Thomas and wife, and Pirtle and wife, should each be charged with one hundred dollars for the two mares, furnished by Shields to the said females; and that the defendants Thomas and wife, should be charged with $50, for a similar advancement to her.

Wherefore the decree is reversed and the cause remanded, with directions to dismiss the commmplainants' bill as to the executor, devisees and heirs of Andrew Burtle, and for further decree against the defendants, James Shields, John G. Shields and Henry Yater, consistent with the principles of this opinion.

*B. Hardin* for plaintiffs : *Harlan & Craddock* for defendants.